﻿Citation Nr: AXXXXXXXX
Decision Date: 10/30/20 Archive Date: 10/30/20

DOCKET NO. 190614-14888
DATE: October 30, 2020

ORDER

Entitlement to an initial rating of 30 percent for migraine headaches effective February 10, 2018 is granted.

Entitlement to a rating in excess of 30 percent for migraine headaches is denied.

Entitlement to a compensable rating for acne is denied.

Entitlement to service connection for scars of the head, face, or neck as secondary to service-connected acne is denied.

Entitlement to service connection for a fistula is denied.

REMANDED

Entitlement to service connection for residual status post pilonidal cyst excision pain is remanded.

Entitlement to service connection for scars of the extremities and trunk as secondary to pilonidal cyst is remanded.

FINDINGS OF FACT

1. Throughout the appellate period, the Veteran’s migraine headaches have manifested as causing characteristic prostrating attacks that occur once every month.

2. Throughout the appellate period, the Veteran’s acne has manifested as only superficial acne.

3. Throughout the appellate period the Veteran has not had a current disability of scars of the head, face, or neck secondary to her service-connected acne.

4. Throughout the appellate period the Veteran has not had a current disability of a fistula.

CONCLUSIONS OF LAW

1. The criteria for an initial rating of 30 percent for migraine headaches effective February 10, 2018 have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.6, 4.7, 4.10, 4.124a, Diagnostic Code (DC) 8100 (2019).

2. The criteria for a rating in excess of 30 percent for migraine headaches have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.6, 4.7, 4.10, 4.124a, Diagnostic Code (DC) 8100 (2019).

3. The criteria for a compensable rating for acne have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.6, 4.7, 4.10, 4.118, Diagnostic Code (DC) 7828 (2019).

4. The criteria for service connection for scars of the head, face, or neck as secondary to service-connected acne have not been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2019).

5. The criteria for service connection for a fistula have not been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from July 1998 to July 2002. 

In June 2019, the Veteran elected the Evidence Submission Reviewed by a Veterans Law Judge (VLJ) lane for her June 2018 and March 2019 rating decisions in the Appeals Modernization Act (AMA) review system. Accordingly, the record was held open for 90 days for the submission of additional evidence in support of the claim. The Board notes that the Veteran has timely submitted additional evidence and the above listed claims are now ready for review.

The Board notes that in a written brief dated September 2020, the Veteran’s representative listed “Entitlement to service connection for skin conditions of seborrheic dermatitis and eczema” as one of the claims currently at issue. However, a review of the Veteran’s June 2019 notice of disagreement lists no such issue, nor is the corresponding January 2019 rating decision (which denied the skin condition issue) listed as being appealed by the Veteran. Accordingly, the Board finds that entitlement to service connection for skin conditions of seborrheic dermatitis and eczema are not currently on appeal before the Board.

I. Increased Rating

Disability evaluations are determined by evaluating the extent to which a Veteran’s service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent, as far as can practicably be determined, the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disabilities specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.   

Pertinent regulations also provide that it is not necessary for all of the individual criteria to be present as set forth in the Rating Schedule, but that findings sufficient to identify the disability and level of impairment be considered. 38 C.F.R. § 4.21. If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3.   

The Veteran’s headaches are rated under DC 8100, which contemplates migraine headaches. A noncompensable rating is assigned for less frequent attacks. A 10 percent rating is assigned for characteristic prostrating attacks averaging one in two months over the last several months. A 30 percent rating is warranted for characteristic prostrating attacks occurring on an average of once a month over the last several months. A maximum 50 percent rating is warranted for very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § 4.124a, DC 8100. 

The Veteran’s acne is rated under DC 7828, which contemplates acne. Under DC 7828 a noncompensable rating is warranted for superficial acne, including comedones, papules, pustules, and superficial cysts of any extent. A 10 percent rating is warranted for deep acne, including deep enflamed nodules and pus-filled cysts affecting less than 40 percent of the face and neck, or deep acne other than on the face and neck. Finally, a rating of 30 percent is warranted for deep acne, including deep inflamed nodules and pus-filled cysts affecting 40 percent or more of the face and neck.

1. Entitlement to an initial rating of 30 percent for migraine headaches effective February 10, 2018 is granted.

2. Entitlement to a rating in excess of 30 percent for migraine headaches is denied.

The Veteran was initially granted service connection for migraine headaches in a June 2018 rating decision, evaluated at 0 percent, effective February 10, 2018. The record includes a report of general information noting that the Veteran called and requested reconsideration of her migraine evaluation in August 2018. It was also noted that the Veteran would submit additional evidence to support her claim through ebenefits. In another report of general information dated March 2019, the Veteran was advised that her claim for reconsideration received in August 2018 was under proper control and a VA examination scheduled for March 2019 was confirmed. Following this examination, the RO issued a March 2019 rating decision increasing the Veteran’s migraine headaches rating to 30 percent, effective August 15, 2018, noting that as the date she filed a new claim for benefits. The Board notes that this is actually the date that the Veteran called and requested reconsideration of her initial migraine headache evaluation. As noted above, in June 2019, the Veteran requested the Evidence Submission Reviewed by a VLJ lane for review of the June 2018 and March 2019 rating decisions regarding her migraine headaches.

The Veteran was given a VA examination for her headaches in April 2018. Here, the examiner diagnosed migraines, including migraine variants and opined that she had characteristic prostrating attacks of migraine headache pain with less frequent attacks. The examiner also opined that the Veteran did not have very prostrating and prolonged attacks or migraines productive of severe economic inadaptability. These findings are consistent with the initially assigned noncompensable rating under DC 8100.

However, in October 2018 the Veteran provided a headache log for the month of November 2017, wherein she logged nearly daily headaches ranging from 2 hours to all day long. Pursuant to 38 C.F.R. § 3.156(b) this evidence is considered as having been filed in connection with the claim which was pending since February 10, 2018, the beginning of the appellate period. The Veteran was given another VA examination for her headaches in March 2019. Here, the examiner again diagnosed migraine headaches, but opined that the Veteran’s migraines have characteristic prostrating attacks that occur once every month. Very prostrating and prolonged attacks of pain productive of severe economic inadaptability were still not noted. This examination is consistent with a 30 percent rating under DC 8100. Although the RO increased the Veteran’s rating to 30 percent in a March 2019 rating decision, it was effective August 15, 2018, rather than February 10, 2018. As noted above, the Veteran submitted a headache log in October 2018, which constitutes new and material evidence within a year of her original claim. Accordingly, the Board finds that a rating of 30 percent for migraine headaches is granted effective February 10, 2018, the date of the Veteran’s claim.

In June 2019, the Veteran provided a report of consultation and examination from a private physician. The physician noted that the Veteran was service connected at 30 percent for migraine headaches “and the examiner concurs,” indicating that the Veteran’s own private physician is of the opinion that a 30 percent rating for her migraine headaches is correct. 

While on her notice of disagreement the Veteran has contended that her migraine headaches warrant a rating of 70 percent, the Board notes that such a rating is not possible for migraine headaches. Moreover, a review of the Veteran’s treatment records do not support a higher rating as there has been no objective indication of very prostrating and prolonged attacks of pain productive of severe economic inadaptability, which is required for a rating of 50 percent. 

In the September 2020 representative brief, it is argued that the Veteran’s service-connected posttraumatic stress disorder (PTSD), incontinence, gastroesophageal reflux disease, and acne conditions cause significant stress and that chronic stress may trigger chronic migraines. However, as noted above, a review of the Veteran’s treatment records do not support of finding of very prostrating and prolonged attacks of pain productive of severe economic inadaptability. Accordingly, entitlement to a rating in excess of 30 percent for migraine headaches is denied.

3. Entitlement to a compensable rating for acne.

The Veteran requested an increased rating of her noncompensable acne in February 2018. In a June 2018 rating decision, the RO continued a noncompensable rating based on a finding of only superficial acne. In a June 2019 notice of disagreement, the Veteran contended that her acne should be rating at 10 percent. However, a review of the evidence does not support such a finding. 

The Veteran was given a VA examination for skin conditions in May 2018. Here, the examiner diagnosed acne, which he found to be superficial acne that affects less than 40 percent of the face and neck. As noted above, under DC 7828 a noncompensable rating is warranted for superficial acne, including comedones, papules, pustules, and superficial cysts of any extent.

A review of the relevant evidence does not support a compensable rating for this condition. Although the Veteran provided a June 2019 opinion from her private physician addressing many of her conditions, acne was not discussed. Moreover, the Veteran’s treatment records do not discuss any findings of deep acne as required for even a 10 percent rating. Finally, in the September 2020 representative’s brief, there is no specific argument in support of a compensable rating for acne. Accordingly, entitlement to a compensable rating for acne is denied. 

II. Service Connection

Generally, to establish service connection a Veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service.” Davidson v. Shinseki, 581 F.3d 1313, 1315–16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).  

Service connection may be granted on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. The evidence must show: (1) that a current disability exists; and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated (worsened in severity beyond its natural progress) by a service-connected disability. Id.; Allen v. Brown, 7 Vet. App. 439, 448–49 (1995).  

VA is required to give due consideration to all pertinent medical and lay evidence in evaluating a claim for disability benefits. 38 U.S.C. § 1154(a). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).  

Lay evidence cannot be determined to be not credible merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1336–37 (Fed. Cir. 2006). However, the lack of contemporaneous medical evidence can be considered and weighed against a Veteran’s lay statements. Id. Further, a negative inference may be drawn from the absence of complaints or treatment for an extended period. Maxson v. West, 12 Vet. App. 453, 459 (1999), aff’d sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).  

4. Entitlement to service connection for scars of the head, face, or neck as secondary to service-connected acne.

In February 2018, the Veteran filed an application for secondary service connection for scars to the head, face, or neck, due to her service-connected acne. The Veteran was given a VA examination for scars in April 2018. Here, the Veteran was found to have a scar status post myomectomy for symptomatic fibroid uterus (the Board notes that the Veteran has been service connected for this scar). However, the examiner opined that the Veteran did not have any scars or disfigurement of the head, face, or neck. In a subsequent VA opinion dated June 2018, an examiner opined that scars were less likely than not proximately due to or the result of the Veteran’s service-connected acne. Specifically, the examiner noted that there was no evidence in the 2017 and 2018 skin and scar VA examinations of any acne scars. “Therefore, any scar present is ONLY due to non acne condition.”

As referred to in the June 2018 opinion, the Veteran was given a VA examination for her scars in November 2017. Here, the examiner noted “The claimant states ‘painful scar’/loss of covering in her history. There were no visible scars on face on day of exam.”

The Board notes that the record contains a VA examination from October 2013, in conjunction with a prior request for an increased rating for the Veteran’s acne. Here, the Veteran was noted to have a history of acne in service with sporadic use of Retin A and noted that the Veteran complained of minor residual scarring. The examiner noted that the Veteran had scaring of the head, face, or neck at the time, writing “Few tiny spots on the cheeks, not visible from a normal interactive distance of 3 feet or more, TNTC, involving less than 1% exposed area, less than 1% total area.” Finally, the examiner noted that the Veteran did not have any active acne at the time of the examination but had some minor residual scarring that was discussed above. Although this is evidence of minimal acne scarring in October 2013, the Veteran did not file the instant claim for service connection for scars secondary to acne until February 2018. The minimal acne scarring in October 2013 is considered too remote to be considered a current disability. See Romanowsky v. Shinseki, 26 Vet. App. 289 (2013). As discussed above, the Veteran was given a more recent VA examination in conjunction the current claim, wherein no residual acne scars were found. 

The Board has considered the September 2020 representative brief, contending that the Veteran’s scarring is related to her service-connected PTSD. However, the Board notes that the Veteran’s representative specifically argued that facial scarring can cause significantly higher PTSD levels. The issue of a higher rating for PTSD is not currently on appeal before the Board, and this argument does not support the claim for service connection for scars of the head, face, or neck secondary to service-connected acne.

As the most recent evidence indicates no current scarring, the Board finds that the Veteran does not have a current disability. Service connection cannot be granted “[i]n the absence of proof of a present disability.” Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The current disability requirement is satisfied when the claimant has a disability at the time the claim is filed or during the pendency of the appeal even though the disability may resolve prior to adjudication. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). The Veteran has provided no credible evidence of residual acne scarring during the pendency of this claim. Accordingly, entitlement to service connection for scars of the head, face, or neck as secondary to service-connected acne is denied.

5. Entitlement to service connection for a fistula.

In February 2017, the Veteran filed an application for service connection for a fistula. In correspondence in support of her claim, the Veteran indicated that she had to have surgery to have a fistula removed once. A review of the Veteran’s treatment records show that the Veteran underwent an anal fistula removal in June 2012. The Veteran’s current treatment records show no recurrence of a fistula, nor is a fistula listed on her active problem list. As noted above, service connection cannot be granted “[i]n the absence of proof of a present disability.” Brammer, 3 Vet. App. 223, 225 (1992). During the pendency of this claim, the Veteran has not provided any credible evidence showing that she is currently suffering from a fistula.

Although the Veteran provided a June 2019 report from a private physician which addresses several other conditions, the report contains no information regarding a fistula. Moreover, in the September 2020 representative’s brief, there is no specific argument in support of the Veteran’s claim for entitlement to service connection for a fistula. Finally, a review of the Veteran’s service treatment records shows no complaints of, or treatment for a fistula, indicating that even if the Veteran did have a current disability (a finding which the evidence does not support), her claim for service connection would also fail at step two, because there is no evidence of an in-service event. Nevertheless, the Veteran’s claim fails at the first step, as the preponderance of the evidence is against the finding of a current disability. Accordingly, entitlement to service connection for a fistula is denied.

REASONS FOR REMAND

1. Entitlement to service connection for residual status post pilonidal cyst excision pain is remanded.

2. Entitlement to service connection for scars of the extremities and trunk secondary to pilonidal cyst is remanded.

A review of the record reveals that the Veteran has suffered from recurrent pilonidal cysts, requiring excision. Treatment records support a finding of residual pain from such excisions. Although the Veteran was given several VA examinations for skin conditions, the Veteran’s recurrent pilonidal cysts were never specifically addressed. The Board notes that at a November 2017 VA examination for scars, the examiner diagnosed a cyst and wrote “Recurring cyst the claimant reports on the day of exam is a new diagnosis unrelated to SC acne.” However, no opinion was given regarding the Veteran’s recurrent pilonidal cysts and her active service. The Veteran has contended that this condition is due to her active military service. The Veteran submitted a report of consultation and examination from a private physician within the applicable 90-day evidence submission window. This report, dated June 2019, includes an opinion that the Veteran’s pilonidal cysts began during her active military service and persists to the present, thus, it should qualify for service connection. This opinion was not based on a review of the file. A review of the Veteran’s service treatment records shows that in January 1999 she was seen for “HCG and DERM question” indicating that the Veteran at least questioned a skin condition during service which may be related to her recurrent pilonidal cysts. The Board finds the lack of examination and opinion regarding the Veteran’s pilonidal cysts to be a pre-decisional duty to assist error. Accordingly, remand is warranted to provide the Veteran a VA examination for her residual pilonidal cyst excision pain and scarring.

The matters are REMANDED for the following action:

1. Schedule the Veteran for a VA examination for her recurrent pilonidal cysts and scarring. The electronic claims file must be reviewed by the examiner, and a note that it was reviewed should be included in the report. The examiner should answer the following questions:

(a.) Is it at least as likely as not (i.e. probability of 50 percent or more) that the Veteran’s pilonidal cysts began during active service?

(b.) If so, is it at least as likely as not (i.e. probability of 50 percent or more) that the Veteran suffers from residuals of pilonidal cyst excision pain?

(c.) If so, please provide a discussion of any scars resulting from the Veteran’s pilonidal cyst excisions, including their size, location, and whether they are painful and/or unstable.

In formulating an opinion, the examiner should specifically address and consider the Veteran’s lay statements, the June 2019 private report of examination and consultation, and the January 1999 service treatment record indicating a dermatology question.

A detailed rationale for the opinion must be provided. If the examiner is unable to offer the requested opinion, it is essential that the examiner offer a rationale for the conclusion that an opinion could not be provided without resort to mere speculation, together with a statement as to whether there is additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge. 

 

 

TANYA SMITH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K. Ruiz, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.